## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES, LLC d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians, and staff, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN R. RUSSO, in his official capacity as Interim Secretary of the Louisiana Department of Health; JIMMY GUIDRY, M.D., in his official capacity as State Health Officer; and JEFF LANDRY, in his official capacity as Attorney General for the State of Louisiana, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. |

## COMPLAINT

Plaintiff June Medical Services, LLC (d/b/a/ Hope Medical Group for Women) ("Hope"), on behalf of its patients, physicians, and staff, by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following:

### PRELIMINARY STATEMENT

1.      This is a constitutional challenge, under 42 U.S.C. § 1983, to Defendants' application of the Louisiana Department of Health's ("LDH") Healthcare Facility Notice/Order #2020-COVID19-All-007 (the "Notice"),[1] dated March 21, 2020, attached as Exhibit A, to previability abortion. In the alternative, Hope seeks relief as applied to itself and its patients, physicians, and staff. For over three weeks during the COVID-19 pandemic, Hope has been in full compliance with the Notice. Recent actions taken by Defendant Landry, and Defendants' new

---

[1] La. Dep't of Health, Healthcare Facility Notice/Order #2020-COVID19-All-007 (Mar. 21, 2020) [hereinafter "Notice"], https://files.constantcontact.com/dd5f31ef601/1e9440a9-14a2-4982-8fb1-a1b129058f8e.pdf.

interpretation of the Notice, however, threaten the provision of abortion care in Louisiana. If not enjoined, Defendants' actions will deny access to essential, time-sensitive healthcare and violate Louisianans' constitutional right to abortion prior to viability.

2.    Since the Notice was issued, Hope has fully complied with it. The text and stated purpose of the Notice is to prevent the spread of COVID-19 by "preserv[ing] Personal Protective Equipment (PPE)" and "utiliz[ing] hospital staffing, equipment, and bed capacity for the transition to the COVID-19 emergency." The Notice, which has immediate effect, directs "that any and all medical and surgical procedures SHALL be postponed until further notice," except medical and surgical procedures (1) "to treat an emergency medical condition" or (2) "to avoid further harms from underlying condition or disease." As to healthcare services other than medical and surgical procedures, the Notice "directs that all healthcare providers postpone all in-person healthcare services that can safely be postponed for 30 days" but leaves that determination to the provider's "best medical judgment."

3.    Now, nearly three weeks since the Notice issued, Defendants have publicly announced their intentions to close abortion clinics in Louisiana through their interpretation of the Notice.[2] In a March 28 press release, Defendant Landry urged Defendant LDH to conclude, contrary to the views of major, national medical and public health organizations, "that elective abortions are not essential procedures and enforce the [Notice]" under that interpretation.[3]

---

[2] Greg Hilburn, *COVID-19: Louisiana Governor, Attorney General Taking Steps to Close Abortion Clinics*, Monroe News-Star, (Apr. 9, 2020), https://www.thenewsstar.com/story/news/2020/04/09/covid-19-louisiana-governor-taking-steps-close-abortion-clinics/5121754002/; Sam Karlin, *Louisiana Officials Investigating Abortion Clinics During Coronavirus Stay-at-Home Order*, https://www.nola.com/news/coronavirus/article_db45b2d8-7a92-11ea-9a6c-17ab001f5b4b.html.

[3] Attorney Gen. Jeff Landry, La. Dep't of Justice, *Shreveport Abortion Clinic Ignoring Health Directive, Further Jeopardizing Public Safety* (Mar. 28, 2020), www.ag.state.la.us/Article/9747; *AG Landry Calls on LDH to Enforce Emergency Order Against Shreveport Abortion Clinic* (Mar. 28, 2020), https://www.arklatexhomepage.com/news/local-news/louisiana-ag-calls-on-ldh-to-investigate-reports-shreveport-womens-clinic-is-violating-emergency-order/; Hilburn, *supra* note 2.

Following the press release, Defendant LDH purportedly agreed to allow agents of the Attorney General's office to conduct site visits at licensed abortion facilities on its behalf.

4.      On April 9, two purported representatives of Defendants entered Hope's facilities—without any previous notice and without a warrant—to evaluate Hope's compliance with the Notice. The two individuals are not staff members of LDH, and upon information and belief, have no medical training. Instead, they are members of the Attorney General's Criminal Division, Medicaid Fraud staff. Among other things, the two individuals examined patient lists; reviewed supply stock and disinfection practices; documented the medical procedures and healthcare visits Hope is performing; and most egregiously, demanded to review confidential patient charts—and then sought hard copies of these charts.

5.      Defendants' threatened actions to shut down Hope will result in a ban of all abortions for Hope's patients. Under Defendants' interpretation and recent threatened enforcement, the Notice would deny essential, time-sensitive care to Louisianans. The effect of the Notice—which has no time limitation—would be to ban previability abortion care in Louisiana for the foreseeable future, particularly those seeking care in Northern Louisiana, in which Hope is the sole abortion clinic.

6.      Like similar efforts to restrict abortion in other states during the COVID-19 crisis, Defendants' actions to limit abortion contravene the guidance of leading health and medical authorities. The American Medical Association ("AMA") cautioned that such attempts by state officials are "exploiting this moment" and warned that "physicians—not politicians—should be the ones deciding which procedures are urgent-emergent and need to be performed."[4] The

---

[4] Patrice A. Harris, President, Am. Med. Ass'n, *AMA Statement on Government Interference in Reproductive Health Care* (Mar. 30, 2020), https://www.ama-assn.org/press-center/ama-statements/ama-statement-government-interference-reproductive-health-care.

American College of Obstetricians and Gynecologists ("ACOG") and seven other leading medical and health organizations also made clear that, during the COVID-19 pandemic, abortion care is essential because it cannot be delayed without risking the health and safety of the patient.[5] ACOG and the AMA have weighed in to say actions like Louisiana's are "likely to increase, rather than decrease, burdens on hospitals and use of PPE. At the same time, [they] will severely impair essential health care for women and place doctors, nurses, and other medical professionals in an untenable position by criminalizing necessary medical care."[6] Following the guidance of these major medical organizations, several states, including Illinois, Massachusetts, Montana, and New Jersey, have explicitly exempted pregnancy-related care, including termination of pregnancies, or added protections for "reproductive health care providers," in their respective health department notices and executive orders to protect access to all reproductive healthcare services during the pandemic.[7]

7.    The COVID-19 pandemic does not reduce the need for abortions; if anything, it makes timely access to comprehensive reproductive healthcare even more urgent, while raising

---

[5] The medical organizations issuing this joint guidance were ACOG, the American Board of Obstetrics & Gynecology, the American Association of Gynecologic Laparoscopists, the American Gynecological & Obstetrical Society, the American Society for Reproductive Medicine, the Society for Academic Specialists in General Obstetrics and Gynecology, the Society of Family Planning, and the Society for Maternal-Fetal Medicine. Am. Coll. of Obstetricians & Gynecologists et al., *Joint Statement on Abortion Access During the COVID-19 Outbreak* (Mar. 18, 2020), https://www.acog.org/news/news-releases/2020/03/joint-statement-on-abortion-access-during-the-covid-19-outbreak.

[6] Br. of Am. Coll. of Obstetricians & Gynecologists, Am. Med. Ass'n, & Other Nationwide Orgs. of Med. Profs. as Amici Curiae in Opp'n to the Pet. for a Writ of Mandamus at 5, *In re: Abbott*, No. 20-50264 (5th Cir. Apr. 2, 2020).

[7] Ill. Exec. Order No. 2020-10, (Mar. 20, 2020), https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx; Memorandum from Elizabeth Kelley, Dir. Bureau of Health Care Safety & Quality, Mass. Dep't of Public Health, on Nonessential, Elective Invasive Procedures in Hospitals and Ambulatory Surgical Centers during the COVID-19 Outbreak (Mar. 15, 2020); N.J. Exec. Order No. 109 (Mar. 23, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-109.pdf; *see also* Steve Bullock, Mont. Gov., Directive Implementing Executive Orders 2-2020 and 3-2020 Providing Measures to Stay at Home and Designating Certain Essential Functions (Mar. 26, 2020), https://covid19.mt.gov/Portals/223/Documents/Stay%20at%20Home%20Directive.pdf?ver=2020-03-26-173332-177; Kathyleen M. Kunkel, N.M. Dep't of Health, Public Health Emergency Order Imposing Temporary Restrictions on Non-Essential Health Care Services, Procedures, and Surgeries; Providing Guidance on Those Restrictions; and Requiring a Report from Certain Health Care Providers (Mar. 24, 2020), https://nmhealth.org/publication/view/rules/5702/; Mich. Exec. Order No. 2020-17 (Mar. 21, 2020), https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522451--,00.html.

additional obstacles for individuals seeking care. Banning or delaying access to abortion care forces patients to carry pregnancies against their will; imposes physical health risks on patients; and can cause significant emotional, social, and economic harms. These burdens are exacerbated by the COVID-19 public health emergency and must be borne by Louisiana women seeking abortion, the majority of whom are poor or low income and already face enormous obstacles accessing abortion care.

8.      Indeed, patients who want to end a pregnancy but are unable to do so in Louisiana and are forced to carry to term will require far more contact with the healthcare system, including multiple prenatal visits, particularly for high-risk pregnancies; additional screening tests; and ultimate hospital delivery requiring multiple medical providers using extensive PPE; or they will face increased travel and contacts outside of their communities to obtain an abortion in another state. Pregnant people need healthcare—whether that is abortion care or prenatal care and, for people who carry to term, labor and delivery. Accordingly, preventing access to abortion would increase the risks, both to patients and the rest of Louisiana's population, of contracting COVID-19 *and* increase the use of PPE and hospital resources—*contrary to the goals of the Notice and public health.*

9.      Hope understands that, like all healthcare providers, it has an important role to play in the COVID-19 pandemic in reducing the spread of the virus and preserving needed medical resources. To that end, Hope is diligently protecting its patients and staff and has put in place numerous protocols to increase social distancing and reduce the spread of COVID-19, while continuing to comply with all relevant Louisiana laws and regulations governing abortion. Hope has also instituted numerous policies in response to the crisis and to ensure full compliance with the Notice, including making every effort to preserve PPE while minimizing the spread of the

virus. Additionally, Hope's provision of outpatient reproductive healthcare does not impact hospital resources, staffing, equipment, or beds.

10.     The Notice, as interpreted by Defendants, would violate decades of U.S. Supreme Court precedent categorically prohibiting states from banning abortion before viability, or imposing burdens on access that exceed the benefits conferred. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2310 (2016); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846, 871 (1992) (The "central principle" of *Roe v. Wade*, 410 U.S. 113, 166 (1973) is that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion."). This is true even when the government is "safeguard[ing] the public health and the public safety"; it may not impose a restriction that is "a plain, palpable invasion of rights secured by the fundamental law." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 30 (1905).

11.     Indeed, every federal district court reviewing states' attempts to ban abortion under the guise of COVID-19 has granted emergency relief in some form. *See Robinson v. Marshall*, No. 2:19-cv-365 (M.D. Ala. Apr. 12, 2020); *Planned Parenthood Ctr. for Choice v. Abbott*, No. A-20-CV-323-LY, slip op. (W.D. Tex. Apr. 9, 2020), *stayed by In re: Abbott*, No. 20-50296 (5th Cir. Apr. 10, 2020), *amended by* No. 20-50296 (5th Cir. Apr. 13, 2020); *S. Wind Women's Ctr. v. Stitt*, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020), *appeal dismissed*, No. 20-6045 (10th Cir. Apr. 13, 2020); *Robinson*, 2020 WL 1520243 (M.D. Ala. Mar. 30, 2020), *amended by* 2020 WL 1659700 (M.D. Ala. Apr. 3, 2020); *Pre-Term Cleveland v. Attorney Gen. of Ohio*, No. 1:19-cv-00360 (S.D. Ohio Mar. 30, 2020), *aff'd*, No. 20-3365, 2020 WL 1673310 (6th Cir. Apr. 6, 2020); *see also Planned Parenthood Ctr. for Choice*, 2020 WL 1502102 (W.D. Tex. Mar. 30, 2020), *vacated*, *In re: Abbott* No. 20-50264, slip op., 2020 WL 1685929 (5th Cir. Apr. 7, 2020).

12.     The Notice—through Defendants' interpretation—targets abortion providers, and if not enjoined as applied to previability abortion (or at minimum as applied to Hope), will force the closure of abortion clinics in Louisiana for the foreseeable future, thereby inflicting immediate and irreparable harm for which no adequate remedy at law exists. Absent an injunction, the Notice, as interpreted by Defendants, will force some patients to delay abortion care for weeks or even months and force others to carry pregnancies to term against their will, in the middle of a pandemic, all in violation of patients' fundamental constitutional right to abortion.

## JURISDICTION AND VENUE

13.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343.

14.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the general legal and equitable powers of this Court.

15.     Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district, and Defendants, who are sued in their official capacities, carry out their official duties at offices located in this district.

## PARTIES

I.     **Plaintiff**

16.     Plaintiff Hope is a reproductive health clinic located in Shreveport, Louisiana. Hope is one of only three remaining licensed outpatient abortion facilities in the state of Louisiana and has been providing reproductive healthcare, including abortion care, since 1980. Hope is a member of the National Abortion Federation ("NAF") and is licensed and inspected by LDH. Hope's physicians are licensed by the Louisiana State Board of Medical Examiners. In addition to providing abortion care, Hope provides pregnancy testing and counseling, contraception, and

education, as well as referrals for prenatal care, treatment of sexually transmitted infections, and adoption. Hope sues on its own behalf and on behalf of its patients, physicians, and staff.

## II.    Defendants

17.    Defendant Stephen R. Russo is the Interim Secretary of LDH ("Secretary") and is sued in his official capacity. LDH has the authority to issue and enforce licensing rules and regulations, and to revoke, suspend, or deny an outpatient abortion facility's license for violation of this or any law. La. Rev. Stat. § 40:2175.6. LDH is the part of the executive branch of the State of Louisiana that is responsible for "the development and providing of health and medical services for the prevention of disease for the citizens of Louisiana," through its offices and officers. La. Rev. Stat. §§ 36:4, 36:251. LDH thus has broad discretion to enforce this Notice.

18.    Defendant Jimmy Guidry is the State Health Officer for Louisiana and is sued in his official capacity. The Emergency Proclamation Number 25 JBE 2020, (the "Emergency Proclamation"),[8] issued by Governor John Bel Edwards authorized the State Health Officer to take action under state law "in relation to this public health emergency."

19.    Defendant Jeff Landry is the Attorney General of the state of Louisiana and is sued in his official capacity. He has asserted the authority, as Attorney General, to enforce laws restricting abortion against every Louisiana abortion clinic, including the Plaintiff, and activated a COVID-19 Task Force in Louisiana.

---

[8] Office of the Gov., Louisiana Proclamation No 25 JBE 2020 – Public Health Emergency – Covid-19 (updated Mar. 22, 2020), https://gov.louisiana.gov/assets/ExecutiveOrders/25-JBE-2020-COVID-19.pdf.

## FACTUAL ALLEGATIONS

### A. Abortion Is an Extremely Safe and Essential Component of Basic Healthcare

20.     Legal abortion is a vital, safe, and common form of healthcare. There is no typical abortion patient: individuals seek abortion for a multitude of personal and often complex reasons. Nearly one in four women in the United States will obtain an abortion by age forty-five.

21.     There are generally two methods of providing abortion care: by oral ingestion of medication or by procedure.

22.     Medication abortion, which involves providing patients medications to ingest orally, is not a "surgery or procedure." Medication abortion involves two medications— mifepristone (brand name Mifeprex) and misoprostol (brand name Cytotec)—to end early pregnancies. The patient takes mifepristone in the clinic and then, 24 to 48 hours later, takes misoprostol at a location of the patient's choosing, typically at home. The pregnancy is passed outside the facility, in a process similar to miscarriage. The use of mifepristone in combination with misoprostol is safe and effective to terminate pregnancies up to 11 weeks (or 77 days) of pregnancy, as measured from the first day of the woman's last menstrual period ("LMP").

23.     Procedural abortion, also referred to as "surgical" abortion, is not what is commonly understood to be surgery, as it involves no incision and no need for general anesthesia. It typically involves the use of gentle suction through the vaginal canal to empty the uterus— referred to as "aspiration." Procedural abortion is a minimally invasive, straightforward, and brief procedure—typically taking about five minutes. It is almost always performed in an outpatient setting.

24.     Both medication abortion and procedural abortion are equally effective in terminating a pregnancy. For some patients, however, one method is medically indicated over the other. For example, a patient may be allergic to one of the medications used in medication abortion,

9

or may have medical conditions that make procedural abortion relatively safer. According to the latest data from LDH, the majority of all abortions in the state were procedural abortions.[9]

25.    Leading medical authorities, including ACOG, the AMA, the American Academy of Family Physicians, the American Academy of Pediatrics, and the American Osteopathic Association have all concluded that legal abortion is one of the safest medical services in the United States.

26.    In a recent comprehensive report on the safety and quality of abortion care, the National Academies of Sciences, Engineering, and Medicine—nongovernmental entities established by Congress and by charter to provide independent, objective analysis and advice to address the nation's complex scientific problems and public policies—concluded that aspiration and medication abortions "rarely result in complications" and do so at rates of "no more than a fraction of a percent."[10]

27.    In one of the most comprehensive peer-reviewed studies to date, researchers found that the rate of major complications from abortion by any method is extremely rare: less than one-quarter of one percent (0.23%) of cases: specifically, such complications arise in just 0.31% of medication abortion cases, 0.16% of first-trimester procedural abortion cases, and 0.41% of second-trimester procedural abortion cases.[11] Abortion-related emergency room visits constitute just 0.01% of all emergency room visits in the United States.[12] It is thus extremely rare for complications from an abortion to require any hospital treatment.

---

[9] La. Bureau of Vital Records & Statistics, *Induced Termination of Pregnancy by Weeks of Gestation and Type of Procedure Reported Occurring in Louisiana, 2018* (2018), http://www.ldh.la.gov/assets/oph/Center-RS/vitalrec/leers/ITOP/ITOP_Reports/Ap18_T22.pdf.

[10] Nat'l Acads. of Scis., Eng'g & Med., *The Safety and Quality of Abortion Care in the United States* 55, 60 (2018).

[11] Ushma D. Upadhyay et al., *Incidence of Emergency Department Visits and Complications After Abortion*, 125 Obstetrics & Gynecology 175, 178–79 (2015).

[12] Ushma D. Upadhyay et al., *Abortion-Related Emergency Room Visits in the United States: An Analysis of a National Emergency Room Sample*, 16(1) BMC Med. 1, 1 (2018).

28.    Medication abortion is also safer than commonly used medications such as aspirin, acetaminophen (Tylenol), and sildenafil (Viagra).

29.    Abortion is also far safer than the only other alternative—carrying a pregnancy to term. Nationally, the risk of death associated with childbirth is approximately 14 times higher than that associated with abortion.[13] However, the risk of childbirth in Louisiana is much higher, and the state has one of the highest maternal mortality rates in the United States.[14] In 2019, the maternal mortality ratio in Louisiana was 72 deaths per 100,000 live births reported in 2019.[15] For Black women, the disparity is even more alarming: 112.2 deaths for every 100,000 births.[16] By comparison, there are 0.58 deaths per 100,000 legal abortions.[17]

30.    According to the most recent data published by LDH, most abortion patients in Louisiana were in their twenties (59 percent) and thirties (28 percent);[18] over 59 percent had previously given birth.[19] Black women made up a disproportionately high percentage (over 61 percent) of those who obtained abortions in Louisiana.[20]

31.    Because pregnancy is not a static condition, abortion is necessarily time-sensitive healthcare.[21] Only three abortion clinics serve the nearly one-million women of reproductive age

---

[13] Nat'l Acads. of Scis. Eng'g & Med., *supra* note 11 at 11, 74–7.

[14] *See* United Health Found., *America's Health Rankings: About Maternal Mortality* (2019), https://www.americas healthrankings.org/explore/health-of-women-and-children/measure/maternal_mortality_a/state/LA.

[15] *Id.*

[16] *Id.*

[17] Elizabeth G. Raymond & Raymond A. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 216 (2012), http://unmfamilyplanning.pbworks.com/w/file/fetch/119312553/Raymond%20et%20al-Comparative%20Safety.pdf; *see also* Tara C. Jatloui et al., *Abortion Surveillance—United States, 2016*, 68(11) Morbidity & Mortality Weekly Rep. Surveillance Summaries 1, 36 (Nov. 29, 2019) (ranging from 0.00052% to 0.00078% for approximately five-year periods from 1978 to 2015), https://www.cdc.gov/mmwr/volumes/68/ss/pdfs/ss6811a1-H.pdf.

[18] La. Bureau of Vital Records & Statistics, *Induced Termination of Pregnancy by Weeks of Gestation, Race, Age, and Marital Status Reported Occurring in Louisiana, 2018* (2018), http://www.ldh.la.gov/assets/oph/Center-RS/vitalrec/leers/ITOP/ITOP_Reports/Ap18_T21.pdf.

[19] Jatloui et al., *supra* note 18 at 1, 36.

[20] La. Bureau of Vital Records & Statistics, *Induced Termination of Pregnancy by Weeks of Gestation, Race, Age, and Marital Status Reported Occurring in Louisiana, 2018*, *supra* note 19.

[21] Pregnancy has a duration of approximately forty weeks LMP.

who live in Louisiana. According to the latest available LDH data, over 8,000 abortions took place in the state in 2018.[22] In 2019, Hope provided 3,213 abortion procedures.

32.     Hope offers medication abortions up to 8 weeks LMP and procedural abortions through 16 weeks, 6 days LMP. Banning or postponing abortion care, even temporarily, will result in some patients being unable to access abortion due to these time constraints. For example, patients who are banned from obtaining an abortion for a few weeks may be unable to obtain one at all at Hope because they would be timed out or because abortion is illegal in Louisiana under pre-existing law after 21 weeks, 6 days LMP.[23]

**B.  Hope's Health & Safety Measures in Response to COVID-19**

33.     Since the COVID-19 crisis began, Hope has been diligent in protecting the health of its patients and staff while providing its patients access to high-quality, timely abortion care. It has put in place numerous protocols to reduce the spread of COVID-19, while continuing to comply with all relevant Louisiana laws and regulations governing abortion. Hope is following recommendations and guidelines published by the Centers for Disease Control and Prevention ("CDC"), NAF, the Centers for Medicare and Medicaid Services, the AMA, and ACOG regarding COVID-19.[24] Further, since receiving the Notice, Hope has adopted additional measures to serve the stated goals of the Notice.

---

[22] La. Bureau of Vital Records & Statistics, *Induced Termination of Pregnancy by Weeks of Gestation, Race, Age, and Marital Status Reported Occurring in Louisiana, 2018*, *supra* note 19.

[23] Louisiana has enacted laws to ban abortions after 6 weeks and 15 weeks. *See* S.B. 181, 2018 Leg., Reg. Sess. (La. 2018) (15-week ban); S.B. 184, 2019 Leg., Reg. Sess. (La. 2019) (6-week ban); *see also*, Anthony Izaguirre, *Ban on Abortions after 15 Weeks Signed into Law in Louisiana, but There's One Hurdle Left*, The Advocate (May 30, 2018, 1:19 PM), http://www.theadvocate.com/baton_rouge/news/politics/legislature/article_fac56312-6435-11e8-b451-275614090005.html; Anna North, *Louisiana just passed a near-total abortion ban. It was written by a Democrat*., Vox (May 30, 2019), https://www.vox.com/2019/5/30/18645952/louisiana-abortion-ban-heartbeat-bill-edwards. Both laws will not take effect unless Mississippi's similar bans are upheld. S.B. 181; S.B. 184; Cassy Fiano, *Great News: Louisiana Governor Signs Law Banning Abortions after 15 Weeks*, LIVEACTION (May 30, 2018, 4:29 PM), http://www.liveaction.org/news/louisiana-governor-bans-abortions-15-weeks.

[24] *See* Nat'l Abortion Fed'n, *Abortion & COVID-19*, https://prochoice.org/abortion-covid-19/.

34.      Neither medication abortion nor procedural abortion requires extensive PPE. No PPE is needed to provide patients with pills for medication abortion. For state-mandated ultrasounds, Hope's medical staff wear one pair of exam gloves.[25] For both medication and procedural abortions, the physician wears one set of washable scrubs per day. If the physician has procedural abortions scheduled, the physician will wear one set of disposable shoe covers for both medication and procedural abortions on that day. For procedural abortions, the physician wears one pair of exam gloves for the exam, one pair of sterile gloves for the procedure, and a loop mask (which has elastic loops and gauze covering). Hope uses latex exam gloves whenever possible, which are not typically used by hospitals. Hope does not have any respirators or use any N95 masks—the PPE in shortest supply. Hope has also changed to a pre-procedure antibiotic that is less in demand during the COVID-19 pandemic.

35.      Nevertheless, Hope has taken every effort to conserve PPE, while still using adequate protection to prevent the spread of COVID-19. It has reduced the number of staff in the clinic at any given time and restricted the staff who can be present in the procedure room during procedural abortion to only those who are medically essential or required by law. By decreasing the amount of staff at the clinic at any given time, Hope is conserving PPE while providing necessary staff members with sufficient PPE to prevent the spread of COVID-19. Hope is conducting follow-up appointments via telephone whenever possible. Hope is also encouraging eligible patients to consider medication abortion, which involves less patient contact and less PPE. Additionally, Hope adopted and trained its staff on a written policy to verify with every patient whether they can postpone their abortion. Hope keeps notes on each patient documenting that the policy was followed and that both the physician and patient agreed that the patient cannot postpone

---

[25] Gloves are typically needed for any transvaginal ultrasound or laboratory exam, but are not required for transabdominal ultrasounds.

their abortion. Pursuant to the Notice, Hope's policy is that all procedures and services that cannot be reasonably delayed, and thus are scheduled and performed, will make every effort to conserve PPE and reduce the possibility of spread and transmission of COVID-19.

36.    Hope does not provide inpatient care and is not equipped to do so—no hospital staffing, equipment, or bed capacity is being diverted away from the fight against COVID-19.

37.    Hope is also making extensive efforts to protect the health of its patients and staff and reduce the risk of COVID-19 transmission. Hope's staff members that are higher-risk have self-isolated. Hope's staff also screens patients for symptoms over the telephone when scheduling appointments, and screens them again upon arrival to the clinic. Upon arrival at the clinic, the temperature of each person, including patients and staff, is checked. Any person exhibiting a fever is not permitted to remain at the clinic.

38.    Hope's staff also maintains social distancing by staggering appointments, keeping patients in separate rooms whenever possible, and spacing patients a minimum of six feet apart during their time in the clinic. Hope has changed its schedule such that procedures and counseling now occur on different days. This permits patients to wait in procedure and recovery rooms on the counseling-only days to maintain social distance. Even so, the clinic now only permits six patients to wait in its largest waiting room, compared to thirty patients prior to the COVID-19 pandemic. There are now three counseling-only days per week, whereas counseling was previously available six days a week. Hope has stopped permitting patients to bring a support person to appointments and has asked some patients to wait in their cars to maintain enough distance in the clinic. At any given time, Hope has significantly fewer patients inside the clinic than it normally had before the COVID-19 pandemic.

39.     Additionally, Hope's staff consistently and repeatedly disinfect surfaces, doorknobs, and other frequently touched surfaces throughout the day. They disinfect all pens and clipboards after each patient's use.

40.     To date, no patient or staff member at the clinic has exhibited symptoms of COVID-19.

**C. Governor Edwards' Emergency Proclamation and LDH's Notice**

41.     On March 11, 2020, Governor John Bel Edwards issued the "Emergency Proclamation," proclaiming that "a statewide public health emergency is declared to exist in the State of Louisiana as a result of the imminent threat posed to Louisiana citizens by COVID-19."[26]

42.     The Emergency Proclamation, among other things, provided that the Secretary of LDH is "expressly empowered to take any and all actions authorized under the Louisiana Health Emergency Powers Act, La. R.S. 29:760 *et seq.* in relation to this public health emergency." The Emergency Proclamation also provided that the "Secretary of the Department of Health and/or the State Health Officer are hereby expressly empowered to take any and all actions authorized thereto under Titles 29 and 40 of the Louisiana Revised Statutes . . . in relation to this public health emergency." Title 29 concerns military, naval, and veterans' affairs, and Title 40 concerns public health and safety.

43.     On March 18, 2020, LDH issued Healthcare Facility Notice #2020-COVID19-ALL-006. In that notice, LDH "direct[ed] that any and all medical and surgical procedures that, in the medical opinion and judgment of the physician or other appropriate healthcare professional

---

[26] Exec. Dep't, Louisiana Proclamation No 25 JBE 2020 – Public Health Emergency – Covid-19, *supra* note 9.

acting within the scope of his/her license, can be safely postponed for a period of thirty (30) days, SHALL be postponed for a period of thirty (30) days."[27]

44.    Then on March 21, 2020, LDH issued Healthcare Facility Notice #2020-COVID19-ALL-007, which had immediate effect, and superseded the March 18, 2020 notice. The Notice directs all healthcare facilities "that any and all medical and surgical procedures <u>SHALL be postponed until further notice</u>," subject to two exceptions. Notice § I(A) (emphasis in original).

45.    The first exception is that "[m]edical and surgical procedures are allowed in order to treat an emergency medical condition," as defined by 42 C.F.R. § 489.24. Notice § I(B)(i). According to the Notice, "an 'emergency medical condition' is defined as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected to result in: (a) Placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy; (b) Serious impairment to bodily functions; or (c) Serious dysfunction of bodily organs." *Id.*

46.    The second exception is that "[m]edical and surgical procedures are allowed to avoid further harms from underlying condition or disease." Notice § I(B)(ii).

47.    Section II of the Notice applies to "Healthcare Services, Other than Medical and Surgical Procedures." Section II.A directs all healthcare providers to transition in-person healthcare services "to a telehealth mode of delivery, when medically appropriate and when the same standard of care can be met as an in-person visit." Notice § II(A). It further directs: "Providers shall make a determination about the appropriateness of telehealth on a case-by-case basis.

---

[27] La. Dep't of Health, Healthcare Facility Notice #2020-COVID19-ALL-006, (Mar. 18, 2020) http://ldh.la.gov/assets/oph/Coronavirus/resources/providers/LDH-Notice-Medical-Surgical-Procedures.pdf.

Providers may encounter legitimate and valid barriers to telehealth delivery and may not be able to shift all services to telehealth." *Id.*

48.    Section II.B "directs that all healthcare providers postpone all in-person healthcare services that can safely be postponed for 30 days." Notice, § II(B). It further directs: "Providers shall use their best medical judgment within the scope of their license to make this determination. Providers shall consider the entire clinical picture when determining if a service can be safely postponed, including the consequences to the patient of postponement and the consequences to the healthcare system." *Id.*

49.    In taking action to reduce the spread of COVID-19, Governor Edwards has followed Cybersecurity and Infrastructure Security Agency ("CISA") guidelines. On March 22, 2020, Governor Edwards issued Proclamation Number 33 JBE 2020 (the "Stay at Home Order"), which limited business operations consistent with CISA guidance.[28] CISA identifies medical and healthcare workers as "essential to continued critical infrastructure viability," including, but not limited to workers in clinics, community mental healthcare facilities, hospitals, rural health clinics, and federally qualified health centers.[29] Louisiana, in accordance with CISA guidance, has also listed healthcare workers and caregivers as essential worker functions.[30]

**D. The Notice's and Defendants' Threat to End Abortion Access Unrelated to Any Valid Public Health Justification**

50.    On March 23, 2020, Hope, through counsel, wrote to Defendants Russo and Guidry, requesting written confirmation from LDH that abortion care is permitted under the Notice

---

[28] *See* Office of the Gov., *COVID-19 Statewide Stay at Home Order* (Mar. 22, 2020), https://gov.louisiana.gov/assets/docs/covid/Essential-Infrastructure_fact-sheet.pdf.

[29] Cybersecurity & Infrastructure Sec. Agency, *Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response* (Mar. 19, 2020), https://gov.louisiana.gov/assets/docs/covid/CISA-Guidance.pdf.

[30] Office of the Gov., *Gov. Edwards Issues Statewide Stay at Home Order to Further Fight the Spread of COVID-19 in Louisiana* (Mar. 22, 2020), https://gov.louisiana.gov/order/.

pursuant to the exceptions in Section I.B (the "March 23 Letter"), attached as Exhibit B.[31] On March 24, the Solicitor General notified Hope's counsel that LDH had referred the March 23 Letter to her office and she would respond "as soon as possible." Three days later, on March 27, the Solicitor General sent the following response, attached as Exhibit C: "[LDH] has responded to all inquiries regarding [the Notice], that the order speaks for itself. It applies to all professional licensees and all licensed health care facilities."

51.     The next day, on Saturday, March 28, Defendant Landry relayed to news outlets that Hope's March 23 Letter was "clearly indicating their intent to defy the order and not delay procedures"[32]—despite the plain language in the letter to the contrary. Defendant Landry also issued a press release that day taking the position that "elective abortions are not essential procedures" and imploring LDH to "enforce the [Notice] fully."[33] Without any basis, Defendant Landry accused Hope of "putting their profits over the health and safety of the public" and "dangerously putting countless people at further risk." According to Defendant Landry, the Notice *does not* "appl[y] equally statewide to all licensed medical facilities and medical professionals under LDH authority." Louisiana is once again singling out abortion care providers and their patients for differential treatment from providers of other medical services and their patients.

52.     On April 9—nearly three weeks after the Notice issued—two individuals from Defendant Landry's Medicaid Fraud Control Unit, Criminal Division—Charles Roark, an Investigator, and Michael Calloway, a Special Agent—made an unannounced, warrantless visit to Hope. These individuals represented that they were working with LDH, but provided no written documentation explaining their relationship to LDH. Hope staff did not believe they could refuse

---

[31] Letter from Jenny Ma, Senior Staff Attorney, Ctr. for Reprod. Rights, to Stephen Russo, Interim Sec'y & Exec. Counsel, La. Dep't of Health, & Jimmy Guidry, M.D., State Health Officer, La. Dep't of Health (Mar. 23, 2020).
[32] *AG Landry Calls on LDH to Enforce Emergency Order Against Shreveport Abortion Clinic*, *supra* note 3.
[33] Landry, *Shreveport Abortion Clinic Ignoring Health Directive, Further Jeopardizing Public Safety*, *supra* note 3.

entry to these individuals without negatively impacting the clinic and themselves. During their several hours visit, these agents asked about Hope's practices—such as its use of PPE, its disinfection practices, social distancing measures, and the number of medical procedures and healthcare visits Hope is performing. Most egregiously, they also asked to review the confidential medical charts of twenty randomly-selected patients, as well as take copies of these files. They requested copies of these charts to be submitted in their entirety by close of business on Monday, April 13. By early afternoon, the Attorney General's Office had sent an email and made multiple calls to the clinic regarding copies of the patient charts.

53.    In light of the unprecedented request for patient charts by non-medical professionals from the Attorney General's Office and the highly confidential nature of the charts, counsel for Hope wrote to Kimberley Humbles, LDH's general counsel on Monday, April 13, attached as Exhibit D, seeking information about the purpose of the inspection; the role of individuals from the Attorney General's office in inspecting licensed health care facilities; the authority for the request for confidential patient medical charts by these individuals; and the individuals to whom the information in these confidential patient charts will be disclosed. Defendant LDH has not yet responded.

54.    Upon information and belief, two individuals from Defendant Landry's office also made an unannounced visit at another abortion clinic, Delta Clinic in Baton Rouge, on April 9, the same day Hope was visited by representatives of Defendant Landry.[34] At 4:42 pm CT, on April 9, Defendant Landry retweeted that he and Governor Edwards were "taking steps today to close abortion clinics during #coronavirus classic #lagov #lalege."[35] On April 10, Rick Edmonds, a

---

[34] Hilburn, *supra* note 2.
[35] Attorney General Jeffrey Landry, Twitter (Apr. 9, 2020 4:42 PM CT), https://twitter.com/JeffLandry/status/1248365602378584067.

Louisiana State Representative sent a petition entitled "Abortion is Nonessential" to the Governor calling for the immediate closure of abortion clinics.[36] On April 13, two individuals from Defendant Landry's office made an unannounced visit to the Women's Clinic in New Orleans.

55.     Defendants now seek to apply the Notice to halt abortion care until further notice in Louisiana. Because there is no time limitation to Section I of the Notice, all patients currently seeking abortion care will be delayed until such time as LDH lifts the Notice or they will be denied access to abortion altogether.

56.     Further, Section II of the Notice covers "Healthcare Services, other than Medical and Surgical Procedures." Provision of medication abortion and patient counseling should be covered by this section of the Notice; indeed, Hope is unaware of the provision of any other oral medication that would not be permitted under the Notice. Unlike other healthcare providers, however, it is unlawful for Hope to transition its services to telehealth, because separate, medically unnecessary abortion-specific Louisiana statues and regulations require numerous aspects of abortion care be provided in person. For example, state law requires that certain state-mandated information be provided to the patient at least 24 hours prior to the abortion "orally and in person." La. Rev. Stat. § 40:1061.17. State law also prohibits the use of telehealth for medication abortion by requiring that when a medication is used "for the purpose of inducing an abortion," the prescribing physician must be in the same room and in the physical presence of the patient. La. Admin. Code tit. 48, I § 4433; La. Rev. Stat. § 40:1061.11. State law requires a patient to obtain an ultrasound prior to an abortion. La. Rev. Stat. § 40:1061.10. Additionally, state law requires multiple methods to verify a pregnancy, in contravention of the standard of care, and requires patients to undergo a vaginal examination before receiving abortion care, whether or not it is

---

[36] La. Representative Rick Edmonds, Twitter (Apr. 13, 2020 11:02 AM CT), https://twitter.com/RickEdmondsLA/status/1249729800245297153?s=20.

recommended by the provider. La. Admin. Code tit. 48, § 4431. Finally, state law mandates laboratory tests that are not necessary for all patients seeking abortion care. *Id.* The vaginal exam, laboratory tests, and ultrasound all require patients to visit a health clinic in-person.

57.     Because these medically unnecessary requirements all mandate a patient visit the clinic in person—on two separate occasions separated by at least 24 hours—Hope is unable to transition most of its in-person healthcare to a telehealth mode of delivery for medication abortion, even though doing so would actually follow the Notice's instructions and advance its goals.

58.     Hope has experienced increased harassment and threats on social media and in person since the COVID-19 pandemic.

### E.  The Notice's Harm to Patients

59.     According to LDH, Louisiana has over 21,000 reported cases of COVID-19 and over 850 COVID-19 deaths.[37] Black Louisianans, who make up the majority of abortion patients in Louisiana, are disproportionately affected by this crisis.[38] The COVID-19 pandemic does not reduce the need for abortions; if anything, it makes timely access to comprehensive reproductive healthcare even more urgent, while raising additional obstacles for individuals seeking care.

60.     Recently, a group of preeminent national medical and leading health organizations issued a joint statement on "Abortion Access During the COVID-19 Outbreak." The guidance instructs that abortion is an essential healthcare service and abortion services should not be delayed during this public health emergency. Specifically, these groups stated: "To the extent that hospital systems or ambulatory surgical facilities are categorizing procedures that can be delayed during the COVID-19 pandemic, abortion should not be categorized as such a procedure" because it "is

---

[37] La. Dep't of Health, *Coronavirus (COVID-19)* (last visited Apr. 13, 2020), http://ldh.la.gov/coronavirus/.
[38] Black Louisianans account for a staggering 60% of deaths, despite making up 33% of the total population in Louisiana. *Id.*; U.S. Census Bureau, *QuickFacts: Louisiana* (last visited Apr. 13, 2020) (reporting July 1, 2019 population estimates), https://www.census.gov/quickfacts/fact/table/LA/PST045219.

an essential component of comprehensive health care" and "a time-sensitive service for which a delay of several weeks, or in some cases days, may increase the risks or potentially make it completely inaccessible."[39] These groups emphasized that "[t]he consequences of being unable to obtain an abortion profoundly impact a person's life, health, and well-being."[40]

61.    Additionally, guidance from ACOG indicates that, because pregnant people are known to be at greater risk of severe morbidity and mortality from other respiratory infections such as influenza and SARS-CoV, pregnant people should be considered an at-risk population for COVID-19.[41] As ACOG and the CDC have explained, pregnant people experience immunologic and physiologic changes that may increase their susceptibility to viral respiratory infections.[42]

62.    The AMA, American Nurses Association, and American Hospital Association also issued a statement "urging the public to #StayHome as we reach the critical stages of our national response to COVID-19," but stressing that "[o]f course, those with urgent medical needs, including pregnant women, should seek care as needed."[43]

63.    Despite this medical and public health guidance, Defendants' interpretation and threatened enforcement of the Notice are intended to close abortion clinics, including Hope. Hope's patients will be harmed in multiple ways as a result of Defendants' actions. Abortion care is already difficult to access in the state. Louisiana ranks among the lowest in the country in terms

---

[39] *Joint Statement on Abortion Access During the COVID-19 Outbreak*, *supra* note 6; *see also* Am. Coll. of Obstetricians & Gynecologists et al., *Joint Statement on Elective Surgeries* (Mar. 16, 2020) (pregnancy-related procedures for which delay will negatively affect patient health and safety should not be delayed), https://www.acog.org/news/news-releases/2020/03/joint-statement-on-elective-surgeries.
[40] *Joint Statement on Abortion Access During the COVID-19 Outbreak*, *supra* note 6.
[41] Am. Coll. of Obstetricians & Gynecologists, *Novel Coronavirus (COVID-19) Practice Bulletin*, https://www.acog.org/clinical/clinical-guidance/practice-advisory/articles/2020/03/novel-coronavirus-2019 (last updated Mar. 13, 2020); *see also* Ctrs. for Disease Control & Prevention, *Pregnancy and Breastfeeding* (last updated Apr. 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/pregnant-women-faq.html.
[42] Ctrs. for Disease Control & Prevention, *Pregnancy and Breastfeeding*, *supra* note 42.
[43] Am. Med. Ass'n et al., *#StayHome to Confront COVID-19* (Mar. 24, 2020), https://www.ama-assn.org/press-center/press-releases/ama-aha-ana-stayhome-confront-covid-19.

of access, with well over 300,000 women per abortion clinic, when evaluating the ratio of clinics in the state to the population of women of reproductive age (close to a million women and three clinics).[44]

64.    Although abortion is extremely safe throughout pregnancy, complication rates increase with gestational age. Delaying abortion care will unnecessarily increase health risks for Hope's patients. In addition, delay in accessing abortion increases anxiety and suffering for many women. Women seek abortion care for a variety of reasons—psychological, emotional, medical, familial, social, and economic. These include financial hardship, concern for the number and spacing of their children, pregnancies that threaten their lives or health, and rape, among other reasons. Delay forces women to continue to endure the physical and psychological burdens of pregnancy despite their decision to terminate the pregnancy. For individuals who have already suffered trauma, such as sexual assault or domestic violence, pregnancy, childbirth, and an additional child may exacerbate an already difficult situation.[45] This is particularly worrisome in light of the COVID-19 pandemic, during which time the United Nations has reported "a horrifying global surge in domestic violence."[46] Further, delay can increase the costs of abortion care itself, as well as the costs of travel, childcare, and taking time off work, among other things. These burdens hit poor Louisianans, who make up a majority of Hope's patients, the hardest, and the COVID-19 crisis only exacerbates these burdens.

---

[44]    U.S.    Census    Bureau,    *2014–2018    American    Community    Survey    5-Year    Estimates*, https://data.census.gov/cedsci/table?d=ACS%205-Year%20Estimates%20Data%20Profiles&table=DP05&tid=ACS DP5Y2018.DP05&g=0400000US22&vintage=2018&hidePreview=true; *see also* Jones et al., *Identifying National Availability of Abortion Care and Distance from Major US Cities: Systematic Online Search* (May 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5972217/ (comparing ratio of clinics to women of reproductive age).
[45] Sarah C.M. Roberts et al., *Risk of Violence from the Man Involved in the Pregnancy After Receiving or Being Denied an Abortion*, 12 BMC Med. 144 (2014), https://bmcmedicine.biomedcentral.com/track/pdf/10.1186/s12916-014-0144-z.
[46] António Guterres, Sec'y-General, United Nations, *Make the Prevention and Redress of Violence Against Women a Key Part of National Response Plans for COVID-19* (last visited Apr. 13, 2020), https://www.un.org/en/un-coronavirus-communications-team/make-prevention-and-redress-violence-against-women-key-part.

65.     There are certain points in pregnancy at which abortion may become more complex or fewer options may be available. Some patients will be unable to access abortion at all, and others will be foreclosed from accessing the abortion method of their preference or that is medically indicated for them. Patients delayed beyond 8 weeks LMP will be unable to access medication abortion at Hope. Patients delayed beyond 16 weeks, 6 days LMP will be unable to access abortion at Hope altogether. This is exacerbated by the already weeks-long-wait for a consult visit at Hope in the wake of COVID-19. Because Defendants seek to apply the Notice to effectively ban essentially all abortion care in the state, patients unable to access abortion at Hope will not be able to access it elsewhere in Louisiana.

66.     A woman who is unable to access an abortion and instead remains pregnant faces substantial health risks in carrying pregnancy to term. According to the CDC, 144 in 10,000 women who gave birth in a hospital in the United States in 2014 experienced unexpected outcomes of labor and delivery that resulted in significant short- or long-term consequences.[47] Almost half of deliveries, including cesarean deliveries, are associated with at least one medical complication.

67.     Carrying a pregnancy to term is especially risky in Louisiana. For example, according to the CDC, Louisiana has the second highest rates of cesarean sections—a major surgery that requires an extended hospital stay—in the country at 37 percent of all deliveries.[48]

68.     In its own informational pamphlet, LDH warns that pregnancy carries a risk of death by emboli, eclampsia, hemorrhage, sepsis, cerebral vascular accidents, and anesthesia-related deaths.[49] LDH has also identified possible risks of vaginal or cesarean birth to include

---

[47] Ctrs. for Disease Control & Prevention, *Severe Maternal Morbidity in the United States*, https://www.cdc.gov/reproductivehealth/maternalinfanthealth/severematernalmorbidity.html.

[48] Ctrs. for Disease Control & Prevention, Nat'l Ctr. for Health Statistics, *Cesarean Delivery Rate by State* (Dec. 19, 2019), https://www.cdc.gov/nchs/pressroom/sosmap/cesarean_births/cesareans.htm.

[49] La. Dep't of Health, *Women's Right to Know, Pregnancy Risks*, http://ldh.la.gov/index.cfm/page/1038.

injury to the bowel, bladder, or rectum; heavy bleeding (hemorrhaging); infection; blood transfusion; hysterectomy; emergency treatment; and "[r]arely, death."[50] According to that pamphlet, one in ten women develop infections as a result of delivery, one in twenty women suffer excessive blood loss as a result of delivery, and delivery can lead to injuries to the bladder, bowel, or rectum; hemorrhaging; infertility; and death.[51]

69.    Indeed, Louisiana has one of the highest maternal mortality rates in the nation.[52] The rates of maternal health risks and mortality, moreover, increase for pregnant people who are poor, of color, and/or lack access to care—the very women most likely to be impeded in their efforts to have an abortion. The State has acknowledged that "Louisiana's consistently low health ranking and persistent racial disparities indicate the need for consistent assessments of women's health before and during their pregnancies."[53]

70.    Delaying abortion also harms public health and is counterproductive to the purposes of the Notice. The Notice's stated goal is "to preserve [PPE] and to utilize hospital staffing, equipment, and bed capacity for the transition to the COVID-19 emergency." Notice § I. But, pregnant people need access to some form of healthcare—whether that is abortion care, prenatal care, or labor and delivery. Louisianans who are unable to obtain abortion care will be forced to carry their pregnancies to term, which will require far more contacts with the healthcare system, including hospitalization, than abortion. These interactions include multiple prenatal visits; pregnancy-related screenings and tests, including repeat ultrasounds and blood tests at a minimum; and ultimately childbirth—all of which will consume far more PPE and hospital staffing,

---

[50] *Id.*
[51] *Id.*
[52] United Health Found., *supra* note 15.
[53] La. Dep't of Health, *Louisiana PRAMS Surveillance Report 2017* at 6 (2017), http://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/maternal/LouisianaPRAMS/2017_PRAMS_Surveillance_Report.pdf.

equipment, and bed capacity than abortion care. Some prenatal care, counseling, and surveillance can be provided via telemedicine, but many aspects of prenatal care, labor and delivery, and postpartum care simply cannot be safely provided remotely by our traditional systems of care. Women who develop pregnancy-related diabetes or other pregnancy-related health conditions will of course require even greater interactions with the health system. Further, more than ninety-nine percent of births in Louisiana take place in a hospital, and Louisiana has the second highest rate of cesarean births in the country.[54]

71.    The COVID-19 pandemic has already exacerbated existing burdens on patients seeking abortion care. It has limited public transit availability, caused layoffs and other work disruptions, shuttered schools and childcare facilities, and otherwise limited patients' options for transportation and childcare support during a time of recommended social-distancing.[55] Indeed, jobless claims in Louisiana are soaring due to the virus.[56] In the week ending on March 21, 2020, the number of initial unemployment claims in Louisiana rose to 72,620 initial claims—a 70,365

---

[54] Marian F. MacDorman et al., Nat'l Ctr. for Health Statistics, *NCHS Data Brief No. 144: Trends in Out-of-Hospital Births in the United States, 1990-2012* at 3 (Mar. 2014), https://www.cdc.gov/nchs/data/databriefs/db144.pdf; Ctrs. for Disease Control & Prevention, Nat'l Ctr. for Health Statistics, *Cesarean Delivery Rate by State* (Dec. 19, 2019), https://www.cdc.gov/nchs/pressroom/sosmap/cesarean_births/cesareans.htm.

[55] *See* Office of the Gov., Proclamation Number 33 JBE 2020, Additional Measures for COVID-19 Stay at Home (Mar. 22, 2020), https://gov.louisiana.gov/assets/Proclamations/2020/JBE-33-2020.pdf (all individuals to stay at home unless performing an essential activity and closing nonessential businesses); Office of the Gov., Proclamation Number 27 JBE 2020, Additional Measures for COVID-19 Public Health Emergency (Mar. 13, 2020), https://gov.louisiana.gov/assets/ExecutiveOrders/27-JBE-2020-COVID-19.pdf (closing schools until April 13); Will Sentell, *Many Early Learning Centers Remain Open, but Parents Encouraged to Keep Kids Home Amid Coronavirus*, The Advocate (Mar. 15, 2020), https://www.theadvocate.com/baton_rouge/news/coronavirus/article_529c777a-66fe-11ea-b0a5-771533b7fecd.html (parents encouraged to keep children home); Kristen Mosbrucker, *Coronavirus is Already Dealing Louisiana an Economic Blow*, Houma Today (Mar. 22, 2020), https://www.houmatoday.com/news/20200322/coronavirus-is-already-dealing-louisiana-economic-blow (noting 30 times volume of people filing for unemployment in week since coronavirus-related business shutdowns in Louisiana); *see also* White House, *The President's Coronavirus Guidelines for America* (Mar. 16, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf; Rebecca Shabad, *Fauci Predicts Americans will Likely Need to Stay Home for at Least Several More Weeks*, NBC News (Mar. 20, 2020) https://www.nbcnews.com/politics/donald-trump/fauci-predicts-americans-will-likely-need-stay-home-least-several-n1164701.

[56] Timothy Boone, *Louisiana Unemployment Claims Triple. Here's How You can File a Claim*, The Advocate (Mar. 17, 2020), https://www.theadvocate.com/baton_rouge/news/coronavirus/article_97d5ad50-6890-11ea-9aa6-abc044ca268c.html.

increase from the 2,255 initial claims filed the previous week.[57] That number has continued to rise, increasing to 102,985 initial claims in the week ending on April 4, 2020.[58]

72.    Moreover, the Notice is in effect indefinitely, but tethered to the duration of the pandemic, which experts believe will last many months.[59] For abortion care, such a delay is, by definition, a ban.

73.    Some patients with the means and resources will seek abortion care in other states that have not banned it. Forcing patients seeking reproductive healthcare to travel outside of their communities does nothing to protect or advance their health and only imposes additional risks and burdens on their ability to obtain care. In fact, such travel would be wholly inconsistent with government guidelines and directives to reduce transmission of COVID-19 by practicing social distancing and avoiding travel and other contacts. For example, Texas has set up checkpoints along its Louisiana border to effectuate Texas's Executive Order imposing a mandatory fourteen-day self-quarantine on people traveling from Louisiana via roadways.[60]

74.    But for many women who seek abortion, leaving the state for care is entirely out of reach. Women seeking abortion are disproportionately poor: approximately 49 percent of women having abortions in the United States in 2014 subsisted below the federal poverty line.[61]

---

[57] U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims Report / USDL 20-510-NAT* at 5 (Mar. 26, 2020), https://oui.doleta.gov/press/2020/032620.pdf.
[58] U.S. Dep't of Labor, *Unemployment Insurance Weekly Claims Report / USDL 20-510-NAT* at 5 (Apr. 9, 2020), https://www.dol.gov/ui/data.pdf.
[59] Peter Baker & Eileen Sullivan, *U.S. Virus Plan Anticipates 18-Month Pandemic and Widespread Shortages*, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/politics/trump-coronavirus-plan.html.
[60] Jeremy Blackman, *Travel from Louisiana Further Tightened by New Checkpoints*, Houston Chronicle (Apr. 5, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/Travel-from-Louisiana-further-tightened-by-new-15180553.php; *see also* State of Texas, *Form for Arrivals from Areas Designated for Mandatory Self-Quarantine* (last visited Apr. 13, 2020), https://www.dps.texas.gov/covidtravel/groundTravel.pdf; Greg Abbott, Governor, Tex., Exec. Order GA-12 (Mar. 29, 2020), https://gov.texas.gov/uploads/files/press/EO-GA-12_roadway_quarantine_for_COVID-19_IMAGE_03-29-2020.pdf (imposing 14-day self-quarantine on people entering Texas "through roadways from Louisiana").
[61] Rachel K. Jones & Jenna Jerman, *Population Group Abortion Rates and Lifetime Incidence of Abortion: United States, 2008-2014*, 107 Am. J. Pub. Health 1904, 1906 (2017).

Another 26 percent are low income, with incomes of 100 to 199 percent of the poverty level.[62] In total, three-fourths of all abortion patients nationally are low-income (i.e., have incomes less than 199 percent of the federal poverty level).[63] And Louisiana is one of the poorest states in the nation, with the nation's third-highest levels of overall poverty and child poverty.[64] Louisianans who are living at or below the poverty line did not earn enough to cover their basic monthly expenses prior to the COVID-19 pandemic, let alone enough to cover the costs of leaving the state to access abortion care.

75.    Effectively forcing a person to continue a pregnancy against their will poses serious risks to their physical, mental, and emotional health. Pregnancy, childbirth, and an additional child may exacerbate an already difficult situation for those who have suffered trauma, such as sexual assault or domestic violence.

76.    It also threatens the stability and wellbeing of their family, including their existing children. Research has found that women denied an abortion were four times more likely than women who received an abortion to experience economic hardship and insecurity lasting for years, with serious consequences for those women and their families.[65] As a result of the COVID-19 pandemic, unemployment rates are soaring, meaning that families are losing not only their income but, in many cases, their employer-provided health insurance; the medical and economic hardships of pregnancy and childrearing, for many families, is thus more acute now than ever.

---

[62] *Id.*

[63] Jenna Jerman, Rachel K. Jones, & Tsuyoshi Onda, *Characteristics of Abortion Patients in 2014 and Changes Since 2008* at 11, Guttmacher Inst. (May 2016), https://www.guttmacher.org/sites/default/files/report_pdf/characteristics-us-abortion-patients-2014.pdf.

[64] Casey Leins, *States with the Highest Poverty Rates*, U.S. News World Report (Sept. 16, 2019), https://www.usnews.com/news/best-states/slideshows/us-states-with-the-highest-poverty-rates?slide=9; Children's Defense Fund, *The State of America's Children* 36 (2020), https://www.childrensdefense.org/wp-content/uploads/2020/02/The-State-Of-Americas-Children-2020.pdf.

[65] Diana G. Foster et al., *Socioeconomic Outcomes of Women Who Receive and Women Who Are Denied Wanted Abortions in the United States*, 108 Am. J. Public Health 407 (2018).

77.     If they are unable to leave the state for care, Louisianans may seek care outside of a regulated clinical setting or be forced to remain pregnant and give birth against their will, increasing the risk that they will experience death or serious injury.

### FIRST CLAIM FOR RELIEF
#### (Substantive Due Process – Rights to Liberty and Privacy)

78.     Plaintiff realleges and incorporates by reference the allegations contained above.

79.     Defendants' interpretation of the Notice as applied to previability abortion violates Plaintiff's patients' rights to privacy, liberty, and bodily integrity and autonomy guaranteed by the Fourteenth Amendment to the U.S. Constitution.

80.     Unless enjoined, Plaintiff's patients and pregnant patients across Louisiana will suffer irreparable harm for which no adequate remedy at law exists by preventing and/or delaying them from obtaining an abortion in Louisiana, thereby causing them to suffer significant constitutional, medical, emotional, and other harm.

### SECOND CLAIM FOR RELIEF
#### (Equal Protection)

81.     Plaintiff realleges and incorporates by reference the allegations contained above.

82.     By selectively burdening patients' fundamental right to abortion without justification and singling out abortion providers and their patients for differential treatment from providers of other medical services and their patients, Defendants' interpretation of the Notice, as applied to previability abortion, violates Louisianans' right to equal protection guaranteed by the Fourteenth Amendment to the U.S. Constitution.

83.     Unless enjoined, Plaintiff, Plaintiff's patients, and pregnant patients across Louisiana will suffer irreparable harm for which no adequate remedy at law exists by preventing

and/or delaying them from obtaining an abortion in Louisiana, thereby causing them to suffer significant constitutional, medical, emotional, and other harm.

### THIRD CLAIM FOR RELIEF
### (Fourth Amendment Violation)

84.     Plaintiff realleges and incorporates by reference the allegations contained above.

85.     By inflicting unannounced, warrantless, lengthy, intrusive and unreasonable inspections on Hope and demanding copies of patient medical charts, Defendants violated Plaintiff's and their patients' Fourth Amendment right to be free from unreasonable searches.

### ATTORNEY'S FEES

86.     Plaintiff is entitled to an award of reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1988.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A.      To immediately issue a temporary restraining order, followed by a preliminary injunction, and later a permanent injunction, restraining Defendants, their officers, agents, servants, employees, and attorneys, and any persons in active concert or participation with them from enforcing the Notice as applied to previability abortion care, or, in the alternative, as applied to Hope and its patients, physicians, and staff;

B.      To enter a judgment declaring that the Notice, as applied to previability abortion, or, in the alternative, as applied to Hope, its patients, physicians and staff, violates the Fourteenth Amendment to the U.S. Constitution;

C.      Grant Plaintiff's reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable laws and rules; and

D.     Grant such other and further relief as the Court may deem just, proper, and

equitable.

Respectfully submitted this 13th day of April, 2020,


                                              /s/ Ellie T. Schilling

Jenny Ma*                                     Ellie T. Schilling
Caroline Sacerdote*                           Louisiana State Bar No. 33358
Arielle Humphries*                            SCHONEKAS, EVANS, McGOEY
CENTER FOR REPRODUCTIVE RIGHTS                & McEACHIN, LLC
199 Water Street, 22nd Floor                  909 Poydras Street, Suite 1600
New York, New York 10038                      New Orleans, LA 70112
Phone: (917) 637-3600                         Phone/Cell: (504) 680-6050
Fax: (917) 637-3666                           Fax: (504) 680-6051
Email: jma@reprorights.org                    E-mail: Ellie@semmlaw.com

* Motions for Admission *Pro Hac Vice*
Pending

ATTORNEYS FOR PLAINTIFF